David A. VERBIS, Plaintiff,

v.

IOWA DEPT. OF HUMAN SERVICES, Cassandra Schank–Smith, and Jacqueline Stephenson, both in individual capacity and as an official, Defendants.

No. 1:98–CV–140.

United States District Court, W.D. Michigan, Southern Division.

April 30, 1998.

David A. Verbis, Grand Rapids, MI, pro se.

Mark Haverkamp, Thomas J. Miller, Attorney General, Council Bluffs, IA, for Iowa Dept. of Human Services and Jacqueline Stephenson.

Cassandra Schank, Smith, Council Bluffs, IA, pro se.

## OPINION AND ORDER

MILES, Senior District Judge.

Plaintiff David A. Verbis filed this *pro se* action on February 13, 1998, asserting various claims for relief against the Iowa Department of Human Services ("IDHS"), Cassandra Schank–Smith, and Jacqueline Stephenson. The matter is currently before the court on a motion by IDHS and Stephenson for dismissal based on a lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Plaintiff has opposed the motion.

For the following reasons, the court orders this action transferred to the United States District Court for the Southern District of Iowa.

## FACTS

Plaintiff David A. Verbis and defendant Cassandra Schank–Smith were married in Oklahoma in 1985. At the time, Verbis was on active military duty, stationed in Lawton, Oklahoma. Approximately two months after their marriage, Schank–Smith left Verbis and moved to Iowa. At the time she left Verbis, Schank–Smith was pregnant with the couple's child. The couple's daughter Ashlee was born on June 23, 1986. In 1987, Verbis filed a divorce action against Schank–Smith in Oklahoma. On December 10, 1987, an Oklahoma judge signed a decree of divorce which, among other things, granted exclusive custody of the couple's daughter to Schank–Smith, providing for reasonable visitation by Verbis.[1] The decree made no mention of child support, although Verbis alleges that he and Schank–Smith verbally agreed that Verbis would pay child support in the amount of $200 per month.

Verbis alleges that after the divorce, he was given a tour of duty in Korea, and he heard nothing from Schank–Smith until June, 1992, when, he alleges, Schank–Smith sent a letter to his commanding officer stating that Verbis was delinquent in his child support payments for the months of April, May, and June, 1992. Verbis alleges that this information was false and that Schank–Smith sent the letter in "an attempt to destroy [his] military career, or to cause him great pain and mental anguish by writing [his] commanding officer with a false report that [he] had not paid[.]" Verbis also alleges that he was put under "[e]xtreme emotional stress" when, after receiving Schank–Smith's letter, the commanding officer demanded that Verbis produce copies of the support checks which he had sent, warning Verbis— who was only eight months from retirement—that he could be discharged if he had not in fact honored his agreement to pay child support. Verbis further alleges that his commanding officer cleared him of any wrongdoing after investigating the matter,

finding that Verbis had been abiding by the couple's agreement. Verbis alleges that he has been retired with a military pension since 1993. After his discharge he moved to Michigan, and he currently resides in Grand Rapids.

Apparently, some time after the divorce, Schank–Smith decided that the support payments which she had been receiving from Verbis were insufficient, and she sought assistance from defendant IDHS, which undertook to collect support payments from Verbis. Verbis alleges that although his liability for child support has never been formally adjudicated, his wages have been garnished by the IDHS.

In November, 1995 Schank–Smith obtained a legal change of Ashlee's surname from Verbis to Schank. Verbis alleges that Schank–Smith, who resides with Ashlee in Council Bluffs, Iowa, obtained the name change in an Iowa court without his knowledge by falsely alleging that he had abandoned the child. Moreover, Verbis alleges, although Schank–Smith was aware of his whereabouts, she did not serve him with notice of the name-change action. Instead, she caused service to be made by publication in a Grand Rapids newspaper. The published notice stated, among other things, that Verbis had "abandoned" his daughter, had "not tried or attempted to have or maintain any type of relationship" with her, and had "not paid child support for over the last two years[.]" Verbis alleges that he was "traumatized" when an "old neighbor from childhood was the person responsible for discovering the publication[.]"[2]

Stephenson is employed by the IDHS's Child Support Recovery Unit in Council Bluffs, Iowa. According to Verbis, Stephenson has violated his privacy by attempting to extract information regarding his retirement pay. Verbis further alleges that Stephenson has caused IDHS correspondence to be mailed addressed jointly to both him and his

---

**1.** In the decree, the judge found that the child had been living with her mother in the state of Iowa since birth.

**2.** Verbis also alleges that Schank–Smith procured an adoption as well as a legal name

change for Ashlee, an act which would operate to relieve him of any legal obligation to support the child. However, Schank–Smith contends that Ashlee was not adopted.

current wife, despite his request that she not do so.

Verbis filed his complaint in this action on February 13, 1998, asserting jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Though he alleges in passing that the defendants conspired to deprive him of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, he also invokes diversity jurisdiction and nominally divides his claims into four causes of action, including intentional infliction of emotional distress, invasion of privacy, defamation, and fraud. He seeks monetary relief of $800,000 in compensatory damages and $1,200,000 in punitive damages.

## ANALYSIS

Defendants Stephenson and IDHS have filed a motion to dismiss in which they argue as follows: (1) the court lacks subject matter jurisdiction to review an Iowa state court domestic relations decision, pursuant to the Rooker–Feldman doctrine; (2) the court should abstain from adjudicating Verbis' claims due to ongoing proceedings in Iowa, pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); (3) the court lacks personal jurisdiction over Stephenson and IDHS; (4) venue is improper in this district, pursuant to 28 U.S.C. § 1391, and (5) Verbis' complaint fails to state a claim upon which relief can be granted. First and foremost, the court must determine whether it has subject matter jurisdiction over this action, for "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

Verbis has stated two different bases for federal jurisdiction in his complaint: federal question and diversity. The court need only find one of these bases to be satisfied in order to conclude that jurisdiction is proper in this federal court. In this instance, both are satisfied. The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and damages have been requested in excess of $50,000. The court also has federal question jurisdiction pursuant to 28 U.S.C.

§ 1331 because Verbis' complaint asserts claims arising under 42 U.S.C. § 1983.

■ Stephenson and IDHS argue that the complaint is subject to dismissal for lack of jurisdiction under the Rooker–Feldman doctrine. This doctrine,

a combination of the abstention and res judicata doctrines, stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court. A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States.

*United States v. Owens,* 54 F.3d 271, 274 (6th Cir.1995). However, the Rooker–Feldman doctrine does not operate to deprive the court of jurisdiction in this instance. First, Verbis alleges that no Iowa court has ever adjudicated his responsibilities. The Rooker–Feldman doctrine may not bar a party against whom there is no state court judgment. *Id.* Second, given his allegation that no Iowa court has ever adjudicated his responsibilities, Verbis' complaint cannot be described as a mere attempt to appeal a case already litigated in state court.

■ Stephenson and IDHS also argue that even if the court does have subject matter jurisdiction, it should invoke the *Younger* doctrine and abstain from exercising that jurisdiction in view of the "ongoing state proceedings." However, Verbis' complaint seeks only damages, not injunctive or other equitable relief. Under Supreme Court precedent, "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 1728, 135 L.Ed.2d 1 (1996). Moreover, although the Supreme Court has recognized a "domestic relations exception" to federal jurisdiction, this exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree.[.]" *Ankenbrandt v. Richards,* 504 U.S. 689, 704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *see also Drewes v. Ilnicki,* 863 F.2d 469, 471 (6th Cir.1988) (dis-

trict court erred in relying on domestic relations exception to dismiss plaintiff's claims against ex-wife based on intentional infliction of emotional distress and interference with employment; exception does not apply "to suits that are actually tort or contract claims having only domestic relations overtones"). In this case, Verbis and Schank–Smith were divorced years ago, and the custody of their daughter was determined at that time. Verbis' complaint asserts at least four claims which are based in tort. "Where, as here, the status of the domestic relationship has been determined as a matter of state law, and in any event has no bearing on the underlying torts alleged," abstention is inappropriate. *Ankenbrandt*, 504 U.S. at 706, 112 S.Ct. 2206 (where plaintiff's complaint against ex-husband and others sought monetary damages for torts committed against couple's children, federal court had diversity jurisdiction and court erred in declining jurisdiction based on domestic relations exception and in invoking *Younger* abstention principles).

 Stephenson and IDHS also argue that the court should dismiss the complaint pursuant to 28 U.S.C. § 1406(a) and Fed. R.Civ.P. 12(b)(3) because venue is improper in this district. An action in which jurisdiction is not founded solely on diversity of citizenship may be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Section 1406(a) provides as follows:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Plaintiff bears the burden of showing that venue is proper. *Kepler v. ITT Sheraton Corp.*, 860 F.Supp. 393, 396 (E.D.Mich.1994). Venue must be proper for each claim and as to each defendant in order for the court to retain the action. *Salpoglou v. Shlomo Widder, M.D.*, 899 F.Supp. 835, 839 (D.Mass. 1995); *Jarrett v. State of North Carolina*, 868 F.Supp. 155, 158 (D.S.C.1994).

Stephenson and IDHS argue that because all of the defendants reside in Iowa and the complaint fails to allege that a substantial part of the events giving rise to the claim occurred in the Western District of Michigan, venue is only appropriate in Iowa. As the Sixth Circuit has noted, § 1391 was amended in 1990 "in order to broaden the venue provisions." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir.1998). Under the amended statute, venue is proper not merely where the claim arose, but in any district "in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b). In other words, the court need not determine whether the plaintiff filed his action in the best venue, but rather whether the forum which he chose has a substantial connection to his claims. *See Bramlet*, 141 F.3d at 263–64.

 Isolating the events giving rise to Verbis' claims, the only contacts he alleges with Michigan—apart from his own residence here—are the following: (1) Stephenson mailed correspondence directed to Verbis in Michigan, notifying him that the IDHS was attempting to obtain an order for support of his daughter; (2) Schank–Smith caused the false notice to be published regarding Verbis in a Michigan newspaper; and (3) Stephenson mailed correspondence addressed to Verbis' current wife in Michigan. No other connections to the state of Michigan have been alleged. Based on these allegations, it appears that the only claim which could conceivably be venued in Michigan is Verbis' defamation claim against Schank–Smith. Under the circumstances, the court concludes that these extremely limited contacts are insufficient to establish that venue is proper in this court.[3]

---

**3.** Stephenson and IDHS also argue that they are not subject to personal jurisdiction in Michigan.

However, assuming this to be true, lack of personal jurisdiction over them, while relevant in

In this situation, § 1406(a) provides the court with the discretion to either dismiss or to transfer the case to any district in which the action could have been brought. Although defendants Stephenson and IDHS have requested dismissal, the court has no knowledge regarding whether dismissal would prejudice any of Verbis' claims. *See Goldlawr v. Heiman,* 369 U.S. 463, 466–67, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (transfer rather than dismissal was required where dismissal would result in running of statute of limitations); *see also Pittock v. Otis Elevator Co.,* 8 F.3d 325, 329 (6th Cir.1993) (suggesting that a showing of prejudice due to failure to transfer is relevant in determining propriety of dismissal for improper venue). Given this uncertainty, and considering Verbis' *pro se* status, the court concludes that this action should be transferred rather than dismissed. Accordingly, the case will be transferred to the Southern District of Iowa's Western Division, where the defendants reside.[4]

### CONCLUSION

For the reasons stated, the court hereby orders this action transferred to the United States District Court for the Southern District of Iowa, Western Division, pursuant to 28 U.S.C. § 1406(a). Because that Iowa federal court will be presiding over this action, this Michigan federal court expresses no opinion on the merits of the motion by Stephenson and IDHS for dismissal for failure

to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).[5] The court also expresses no opinion on the merits of plaintiff Verbis' pending motions to strike (docket nos. 5 and 11) and pending motion for default judgment (docket no. 10).

---

actions founded only on diversity under § 1391(a), is not relevant under § 1391(b), which provides for venue in a district where "any defendant may be found, if there is no district in which the action may otherwise be brought." (In this case, no defendant "may be found" in the Western District of Michigan.) Moreover, a lack of personal jurisdiction over Stephenson and IDHS would not divest the court of the power to order a transfer of venue pursuant to § 1406(a). *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (holding that the language of § 1406 "is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not").

4. Although Schank–Smith, who is acting *pro se,* has not joined in the motion filed by Stephenson

and IDHS, she has filed an amendment to her answer in which she states that she "does not waive jurisdiction in the State of Iowa." (docket no. 8). Under the circumstances, the court finds that she does not object to the transfer of venue.

5. It is noted that the defendants' motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) consists of three conclusory sentences which do not refer by name to any of the particular causes of action which Verbis has attempted to assert. The motion is unaccompanied by any citations to relevant law. *See* Pre–Answer Motion to Dismiss at 3, ¶s 8, 9. (Local Rule 27(a) requires all motions filed in this district to be accompanied by a supporting brief—a requirement with which defendants Stephenson and IDHS have failed to comply.) Accordingly, even if this court were inclined to rule on the merits of a case which is being transferred to another federal district, the court would not do so in this instance.